**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ESTATE OF JOE BROWN,** | |
| **Plaintiff,** | **Case No. 10 C 7141** |
| **v.** | |
| **ARC MUSIC GROUP,** *et al.,* | **Hon. Harry D. Leinenweber** |
| **Defendants.** | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The late Joe Brown was a musician and founder of three Chicago record labels, the first in 1949.  Brown died in 1976.  In 2008, his son, Michael Brown, began looking into his father's various recordings and became convinced that his father's Estate was due fees and royalties for songs his father produced.  Brown subsequently was appointed the independent administrator of his father's estate, (hereinafter, "the Estate," or "Plaintiff.")

The Estate brought the instant Complaint alleging, *inter alia*, breach of fiduciary duty, fraud, copyright infringement, and civil conspiracy against various defendants.

After two sets of Defendants brought Motions to Dismiss, Plaintiff sought and was granted leave to file a Second Amended Complaint.  Unfortunately, that Complaint did little to clarify matters and is now the subject of Motions to Dismiss by Defendants

Music Sales Corp. ("Music Sales"), Frederick Music Co. and Vincent Brandom (collectively, the "Frederick Defendants"), Katrina Music Co. and Willie C. Cobbs (collectively, the "Katrina Defendants") and Arc Music Group and Opus 19 Music, LLC (collectively, the "Arc Defendants"). For the reasons stated herein, all claims are dismissed with prejudice, except that the Estate may replead its claims for an accounting and unjust enrichment against the Arc Defendants within 30 days of the date of this Order.

## I. **BACKGROUND**

The Plaintiff's Second Amended Complaint alleges that this Court has jurisdiction on the basis of the Copyright Act under 28 U.S.C. § 1338(a) and on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).

The following facts are taken from the Plaintiff's Second Amended Complaint, and will be presumed to be true for the purposes of Defendants' Motions to Dismiss. Joe Brown owned and operated Lawn Music Co. ("Lawn"), the JOB Record Label ("JOB"), and Ruler Record Label ("Ruler") in Chicago beginning in approximately 1949. His Estate is the successor in interest to Lawn, JOB, and Ruler, which were engaged in the business of creating, recording, producing and publishing music. During the 1940's and 1950's, these companies copyrighted hundreds of musical compositions. In particular, the Estate, according to its Second Amended Complaint,

is the owner of all or a portion of certain compositions, including "This New Generation," "Dark Road Blues," and "Please Don't Leave."

Unfortunately, after laying out these basic facts, the Second Amended Complaint becomes vague and difficult to follow, providing sketchy details of alleged machinations in regard to Brown's musical compositions. For clarity, the allegations as to each Defendant will be summarized within the discussion of that Defendant's Motion to Dismiss.

## II. **ANALYSIS**

Although each Defendant makes somewhat different arguments in support of its Motion to Dismiss, each argues that the Second Amended Complaint should be dismissed pursuant to FED. R. 12(b)(6) because it fails to state claims upon which relief can be granted.

A motion to dismiss for failure to state a claim should be granted if the complaint fails to satisfy FED. R. CIV. P. 8's pleading requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must construe the complaint in the light most favorable to the plaintiff and draw all inferences in its favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

However, "it is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [it] that *might* be redressed by the law." *Swanson v. Citibank*, 614 F.3d 400, 403 (7th Cir. 2010). Rather, the plaintiff must provide enough factual detail to "present a story that holds together." *Id.* at 404.

Because each 12(b)(6) Motion to Dismiss presents somewhat different issues, the Court will address each individually.

### A. Music Sales' Motion

Music Sales argues that dismissal is required because, at best, the Estate has alleged that Music Sales breached a contractual obligation to pay certain royalties, but it has not brought a breach of contract claim. Plaintiff seeks to recover from Music Sales for Breach of Fiduciary Duty (Count V), Fraud (Count VI), Unjust Enrichment (Count VIII), and Civil Conspiracy. (Count XI). It also seeks an accounting (Count IX) and the imposition of a constructive trust (Count X).

As it does in response to all of the Motions to Dismiss, Plaintiff points out in its response to Music Sales' Motion that the events at issue here occurred between 30 and 50 years ago. Plaintiff contends that it possesses evidence "not included in the Complaint so as not to confuse the trier of fact and to create a clear, 'short and plain statement of the claim,' as per

Rule 8(a)(2)." This is all well and good, provided that Plaintiff alleges sufficient facts to provide fair notice of its claims.

However, its Second Amended Complaint is deficient in various respects. The gist of the Estate's claim against Music Sales stems from a March 6, 1964, Publishing Agreement between Lawn and Frederick Music. In the agreement, Lawn granted Frederick an exclusive license to use the musical compositions in its catalogue in exchange for royalties and other payments. *See* Ex. H. to Pl.'s Second Am. Compl. In 1996, Frederick Music assigned its rights under that agreement to Music Sales, which gave Music Sales the right to publish these compositions in exchange for the payment of certain royalties to Lawn. The Second Amended Complaint alleges that Music Sales has received royalties for Lawn works including "On the Road Again," "Five Long Years," and "You Don't Love Me," but has failed to pay the Estate its share. No allegation is made as to how much is allegedly owed to the Estate. Music Sales contends that it repeatedly has offered the Estate the opportunity to conduct an independent audit of Music Sales' records to verify whether any royalties are due, but Plaintiff has rejected these overtures.

### 1. *Breach of Fiduciary Duties (Count V)*

Music Sales argues that Count V must be dismissed because Plaintiff has not adequately pleaded the existence of a fiduciary duty on its part. Under Illinois law, to state a claim for breach

of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) resulting damages. *See LaSalle Bank Lake View v. Seguban,* 937 F.Supp. 1309, 1324 (N.D. Ill. 1996).

Here, the Second Amended Complaint alleges merely that "after the execution of the Catalog Purchase on July 1, 1996, there existed a fiduciary relationship of trust and confidence between the Defendants and the [sic] Joe Brown and Lawn." Pl.'s Second Am. Compl. ¶ 142. This conclusory allegation is insufficient to allege a fiduciary relationship.

As a matter of law, the mere fact that Music Sales assumed Frederick's obligations under the Publishing Agreement does not mean that a fiduciary relationship was created between Music Sales and Lawn. *See, e.g., Estate of Stepney v. UMG Recordings, Inc.,* No. 10 C 8266, 2011 WL 2119130, at *3 (N.D. Ill. May 26, 2011) (holding that contractual relationship between musician and recording company did not give rise to fiduciary duty); *Mellencamp v. Riva Music Ltd.,* 698 F.Supp. 1154, 1159-60 (S.D.N.Y. 1988) (holding that obligations assumed by a publisher in an exclusive licensing contract were not, as a matter of law, fiduciary duties). Plaintiff cites *CBS, Inc. v. Ahern*, 108 F.R.D. 14, 24-26 (S.D.N.Y. 1985), for the proposition that a fiduciary duty can exist where a recording company has a contractual duty to pay royalties to an artist. However, in that case, the music group alleged that the

- 6 -

agreement at issue expressly provided that the recording company was to hold previously earned royalties in a special account for the group's benefit. *Id.* at 25. The court found this allegation was sufficient to state a claim for breach of fiduciary duty, but specifically noted that a "simple contract" does not create a fiduciary relationship. *Id.*

Plaintiff additionally cites *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 283 (N.Y. App. Div. 1988). There, the court held that a "long-enduring" relationship of more than 25 years between the Beatles and the group's record company was indicative of a "special relationship of trust and confidence, one which existed independent of the contractual duties" and which was sufficient to state a claim for breach of fiduciary duties distinct from the alleged breach of contract. *Id.*

Neither case provides much support for Plaintiff's position. Plaintiff acknowledges that a fiduciary relationship arises when a relationship of trust or confidence exists between the parties, but does nothing to explain how such a relationship existed in this case or why the Publishing Agreement (or Music Sales' assumption of Frederick Music's duties under it) was anything more than an arm's length commercial transaction. *See Sony Music Entm't, Inc. v. Robison*, No. 01 CIV 6415, 2002 WL 272406, at *3 (S.D.N.Y. 2002) (noting that while the line between a contractual and fiduciary relationship may be blurry, "additional factors are necessary to

convert a conventional business relationship into a fiduciary relationship."). As such, Count V of the Second Amended Complaint is dismissed for failure to state a claim upon which relief can be granted.

### 2. *Fraud (Count VI)*

Music Sales argues that Count VI, alleging fraud based on Music Sales' failure to pay monies for works sold as part of the Frederick Catalogue, is inadequately pleaded. Under FED. R. CIV. P. 9(b), a party must state with particularity the circumstances surrounding an alleged fraud. This means that a complaint should explain the "who, what, when, where and how" of a fraudulent scheme. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Here, the Estate contends that it has done so because it has alleged that Music Sales engaged in "concealment, deception, and failure to notify and pay the Plaintiff monies for works sold as part of the Frederick Catalogue," that this fraud has been ongoing since 1996, and that it occurred in New York and Chicago. However, although Plaintiff couches its claim in the lexicon of fraud, it boils down only to an allegation that Music Sales failed to pay royalties due under the Publishing Agreement. This may amount to a breach of contract, but is insufficient to state a claim for fraud. *See Bucciarelli-Tiger v. Victory Records, Inc.*, 488 F.Supp.2d 702, 711 (N.D. Ill. 2007). As such, Count VI of

Plaintiff's Complaint is dismissed for failure to state a claim upon which relief can be granted.

### 3. *Unjust Enrichment (Count VIII)*

Music Sales contends that the Estate's unjust enrichment claim against it fails because a contract governs the relationship between the parties. Plaintiff points out that it is not bringing a claim for breach of contract (although it does not explain why not), but is instead alleging that Music Sales received a benefit from Joe Brown's work and that equity requires that Music Sales pay for the benefit conferred. It is true that where a party pleads breach of contract, it may plead unjust enrichment in the alternative. *See Stepney*, 2011 WL 2119130, at *3 (citing *Horwitz v. Sonnenschein Nath and Rosenthal LLP*, 926 N.E.2d 934, 947 (Ill. App. Ct. 2010)). But a plaintiff cannot do what the Estate attempts here — allege that there was a contract that it covers the claims at issue here, and that Music Sales was unjustly enriched by its breach. *See Allied Vision Grp., Inc. v. RLI Prof. Techs., Inc.*, 916 F.Supp. 778, 781–82 (N.D. Ill. 1996) (holding that FED. R. CIV. P. 8(e)(2) does not allow a plaintiff to plead within a single count that there was an agreement and that the defendant was justly enriched). As such, Count VIII is dismissed as to Music Sales for failure to state a claim.

#### *4. Accounting (Count IX)*

Plaintiff's claim for an accounting against Music Sales also must be dismissed. Typically, to state a claim for an accounting under Illinois law, a plaintiff must show "the absence of an adequate remedy at law and one of the following: (1) a breach of fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Cole-Haddon, Ltd. v. The Drew Philips Corp.,* 454 F.Supp.2d 772, 778 (N.D. Ill. 2006). The Estate has failed to plead adequately any of these elements. In fact, Music Sales has repeatedly offered the Estate the chance to conduct an independent audit of its records, and it has refused. Further, it is clear that a breach of contract claim would provide an adequate legal remedy for any unpaid royalties. Nor has the Estate shown the existence of a fiduciary relationship or fraud. Under these circumstances, there is no need for an accounting.

For example, in *Drake Enters., Inc. v. Colloid Envtl. Techs. Co.*, 08 C 6753, 2009 WL 1789355, at *2-3 (N.D. Ill. June 24, 2009), the Court found that no accounting was required for claim for failure to pay patent royalties because the claim amounted to "a run-of-the-mill breach of contract claim with complicated damages calculations." *See also Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F.Supp.2d 846, 857 (N.D. Ill. 1999) ("An accounting claim is improper without a specific, recognized factual predicate.").

Although the Estate has gone out of its way to call its claim against Music Sales everything but a breach of contract, these principles apply here. The Court notes that Music Sales filed a motion to dismiss the Estate's original complaint, in which it also pointed out that any cause of action would arise under breach of contract. The Estate has disavowed this theory, and the Court will not force the estate to pursue it. *See Walker v. Gibson*, 633 F.Supp. 88, 91 (N.D. Ill. 1985). However, no claim for an accounting lies against Music Sales, and Count IX is dismissed as to it.

### 5. *Constructive Trust (Count X)*

The Estate's claim for a constructive trust fails for much the same reasons as its accounting claim — it has not adequately pleaded either fraud or the existence of a fiduciary relationship. *Schultz v. Schultz*, 696 N.E.2d 1169, 1173 (Ill. App. Ct. 1998) (noting that a constructive trust arises under circumstances of fraud, breach of fiduciary duty, duress, mistake, or coercion). Indeed, the Seventh Circuit has noted that a breach of contract "is not analogous to the wrongful activity that has been found to warrant the imposition of a constructive trust." *Amendola v. Bayer*, 907 F.2d 760, 763 (7th Cir. 1990). Where the Estate has made no specific allegations of wrongdoing against Music Sales other than a failure to pay royalties due under a contract, this claim must be dismissed.

### 6. *Civil Conspiracy (Count XI)*

In order to state a claim for civil conspiracy under Illinois law, a plaintiff must show: (1) a combination of two or more people; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004).

The Estate's claim for civil conspiracy is vague in the extreme. It alleges that Defendants conspired to commit fraud, breach of fiduciary duty, copyright infringement, or unjust enrichment, but provides no details as to the nature of the alleged agreement between the defendants or what role each defendant took in the alleged scheme. General allegations such as "Defendants conferred to formulate information and ideas in furtherance of a common scheme," Second Am. Compl. ¶ 181, and "Defendants had an agreement to engage in a conspiratorial act to harm, harass, exploit, and/or defraud the Plaintiff," *Id.* at ¶ 180, are simply insufficient to state a claim for civil conspiracy. Furthermore, the Estate has failed to allege adequately any of the tort claims underlying the alleged civil conspiracy, so it cannot stand. *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l. Grp., Inc.*, No. 07 C 2898, 2009 WL 466802, at *16 (N.D. Ill. Feb. 23, 2009).

- 12 -

### 7. *Leave To Amend*

The Estate requests leave to file another amended complaint against Music Sales, while Music Sales contends that the Estate's repeated failure to fix the problems in its Complaint justifies dismissal with prejudice.  The Court agrees with Music Sales.

Leave to amend is discretionary in this circumstance, and the denial is appropriate in cases of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in the complaint, undue prejudice to the defendant, or where amendment would be futile.  *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011).

The Estate points out that its First Amended Complaint served only to change the name of a former defendant, so this is its first substantive re-pleading of its claims.  But the Court notes that the Estate has not proffered a third amended complaint for the Court's review.  Additionally, the Estate has repeatedly resisted offers from Music Sales to audits its records, even though the crux of the Estate's claim against Music Sales is that the company owes it royalties.  This case was filed in November 2010, and Music Sales first filed a Motion to Dismiss on March 9, 2011.  This Court granted the Estate leave to amend, but the Estate clearly did not take the time to properly investigate this case and formulate its claims.  Rather, the Estate has taken the "kitchen-sink" approach of bringing a number of poorly formulated claims against Music Sales.  Plaintiff has unduly delayed the resolution of its claims

against Music Sales, and its request for leave to amend its claims against Music Sales is denied.

### B. The Frederick Defendants' Motion to Dismiss

The Estate also has sued Frederick Music and Vincent Brandom, its owner, (collectively, the "Frederick Defendants") in connection with the 1964 Publishing Agreement. Under that agreement, as explained above, Lawn gave Frederick an exclusive license to all of Lawn's musical compositions and copyrights in exchange for the payment of certain fees and royalties. The Estate alleges that the Frederick Defendants have failed to pay Lawn any fees or royalties for these works since 1976. The Frederick Music catalogue, including all rights under this agreement, then was sold to Music Sales in 1996. The Estate further alleges that it did not receive any fees or royalties from that sale. As such, it seeks to recover from Frederick Defendants for breach of fiduciary duty (Count III), unjust enrichment (Count VIII), and civil conspiracy (Count XI). The Estate also requests an accounting (Count IX) and the imposition of a constructive trust (Count X).

### 1. Statute of Limitations

The Frederick Defendants move to dismiss these claims on various grounds, but the primary problem with the Estate's claims against the Frederick Defendants is that they are barred by the statute of limitations. Frederick Music assigned its rights to the

compositions at issue to Music Sales in 1996, more than fourteen years before this lawsuit was filed.

The Estate, in its response, focuses on when Michael Brown learned of the Frederick Defendants' alleged failure to pay fees owed to Lawn. It argues that it was not until Brown heard one of his father's songs playing in a movie that he began to wonder why the family had not received payment for that song and began investigating, in about November of 2008. The Estate argues that Brown's family knew nothing about any alleged wrongdoing before that time.

This does not address the key issue, however. Regardless of when Michael Brown learned of the alleged failure to pay royalties, Lawn (or someone associated with Lawn) should have known it had a cause of action against Lawn when the royalty payments stopped in 1976.

The statutes of limitations for contract actions and torts arising from contractual relationships ordinarily accrue at the time of the breach, not when the party sustains damages. *Del Bianco v. Am. Motorists Ins. Co.*, 392 N.E.2d 120, 124-25 (Ill. App. Ct. 1979). Claims for breach of fiduciary duty, unjust enrichment, fraud, and a request for an accounting all are subject to a five-year statute of limitation. 735 Ill. Comp. St. 5/13-205.

To the extent the Estate acknowledges this problem, it alleges that the doctrine of fraudulent concealment tolls the statute of

limitations. *See* 735 Ill. Comp. St. 5/13-215 (providing that if liable party fraudulently conceals the cause of action from the plaintiff, an action may be brought within five years after the plaintiff discovers that it has a cause of action). However, Plaintiff alleges no facts showing that the Frederick Defendants acted affirmatively to keep the Estate (or Lawn before it) from discovering the existence of a cause of action. *Foster v. Plaut*, 625 N.E.2d 198, 203 (Ill. App. Ct. 1993). Mere silence on the part of the Frederick Defendants is not enough. *Id.* Rather, the Plaintiff must allege that the Frederick Defendants lulled the Estate into delaying the filing of this action. *Id.* Moreover, even if the Estate could show that the Frederick Defendants made fraudulent misrepresentations, this tolling provision does not apply if the Plaintiff (or its predecessors-in-interest) could have discovered the cause of action with reasonable diligence. *Id.*

The Estate completely fails to address these requirements, and its talismanic invocation of terms like fraud, misrepresentation, and concealment is not enough to make its claims timely. *See Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (holding that if a plaintiff pleads facts that show its claims are barred by the statute of limitations, it pleads itself out of court).

### 2. Inadequate Pleading

Regardless, the Court notes that not only are the Estate's claims against the Frederick Defendants defeated by the statute of limitations, but the Second Amended Complaint fails to allege facts sufficient to state a claim for breach of fiduciary duty, common law fraud, unjust enrichment, civil conspiracy, an accounting, or a constructive trust for many of the same reasons discussed in regard to the claims against Music Sales. The claims against the Frederick Defendants thus fail.

### 3. Leave to Amend

Plaintiff seeks leave to amend his claims against the Frederick Defendants, but again proffers no explanation as to how such a Complaint would be viable. Further, as with Music Sales, the Frederick Defendants had filed a motion to dismiss Plaintiff's previous complaint which raised the issue of the statute of limitations as a bar to Plaintiff's claims. The estate has failed to in any way meaningfully respond to this issue, so the claims against the Frederick Defendants are dismissed with prejudice.

### C. The Katrina Defendants' Motion to Dismiss

The Estate's claims against Willie Cobbs and Katrina Music are related to the song "You Don't Love Me." The Court will attempt to recite the facts in the light most favorable to the Estate, as is the standard for a motion to dismiss, but must point out again that

the Estate's pleading of the facts is at times so confusing as to be incomprehensible.

At any rate, this song was published in 1958 on the Ruler Records label, and performed by Cobbs. Plaintiff has attached to its Second Amended Complaint numerous copyright registrations made by Frederick Music, acting as administrator for Lawn, which listed Cobbs as the author of "You Don't Love Me" and an alternative version of the song, known as "Please Don't Leave." These registrations date back to May 4, 1962.

Additionally, as discussed above, Plaintiff acknowledges that in 1964, Lawn Music Company entered into an exclusive license with Frederick Music that covered the entire Lawn Catalogue and which gave Frederick the exclusive right to license those compositions, as well as all rights existing under Lawn's copyrights.

Subsequently, in 1971, Katrina Music, as assignee of Cobbs' copyright interest in "You Don't Love Me," brought suit against Frederick Music in the United States District Court for the Southern District of New York. A stipulation of settlement was filed on August 7, 1968, a copy of which the Katrina Defendants attached to their memorandum in support of their motion to dismiss. This settlement declared Cobbs the sole author of the song and provided that Katrina Music and Frederick Music jointly owned the copyright to the song. *See* Ex. 1 to Memo. of Law in Support of

Defs. Katrina Music Company and Willie C. Cobbs' Motion to Dismiss the Second Am. Compl.

The core of Plaintiff's claim is that the Katrina Defendants have misrepresented the ownership of "You Don't Love Me" and related songs, and have failed to pay royalties due the Estate. Plaintiff seeks to recover from the Katrina Defendants for fraud (Count VII), unjust enrichment (Count VIII), and civil conspiracy (Count XI), and seeks an accounting (Count IX) and the imposition of a constructive trust (Count X).

The Katrina Defendants argue that the settlement agreement is dispositive of the claims at issue here, and that all the claims against it are time-barred and inadequately pleaded.  The Court will address each claim in turn.

### 1.  *Count VII (Fraud)*

Plaintiff's fraud claim against the Katrina Defendants, like all of its other fraud claims, is too thinly pleaded to stand. Essentially, Plaintiff contends that the Katrina Defendants withheld royalties that were due and owning to the Estate, and made representations that induced others to do likewise.  No detail is provided as to these representations.  As noted above, allegations of fraud are subject to the heightened pleading standards of FED. R. CIV. P. 9(b), and the Estate falls well short of showing the "who, what, when, where and how" of a fraudulent scheme.  *DiLeo*, 901 F.2d at 627.  In its response, the Estate claims that the fraud

was "for misrepresenting the ownership of 'You Don't Love Me," and for failure to pay Plaintiff monies they are owed."

But the failure to pay royalties does not amount to fraud, even if the Estate alleged a basis upon which the Katrina Defendants were obligated to do so – which it has not. Additionally, the Estate claims that the fraud took place at the time of the 1968 settlement and the various copyright registrations. As noted above, Illinois law provides a five-year statute of limitations for fraud. 735 Ill. Comp. Stat. 5/13-205. The Court notes that the last registration of "You Don't Love Me" mentioned in the Complaint happened in 1994. As with its claims against the Frederick Defendants, the Estate contends that it knew nothing of the claims until 2008, but that does not make them timely.

Although the Estate denies it, its real complaint appears not to be fraud, but rather an authorship dispute under the Copyright Act in that it claims that Cobbs wrote "You Don't Love Me" as a work-for-hire for Joe Brown, who would then have been the sole owner of the composition. See *Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 380 F.3d 624, 634 (2d Cir. 2004). However, the Estate's purported support for this contention, including an unrelated songwriter's contract from 1971 pertaining to different songs, provides no support at all. More importantly, Plaintiff disavows any reliance on the

- 20 -

Copyright Act, and such a claim likely would have expired long ago anyway. *See Merchant v. Levy*, 92 F.3d 51, 57 (2d Cir. 1996) (providing that claims of authorship under the Copyright Act are subject to a three-year statute of limitations). For these reasons, the Court dismisses Count VII.

### *2. Unjust Enrichment (Count VIII)*

Plaintiff's allegation of unjust enrichment against the Katrina Defendants alleges only that they have enjoyed the "fruits of the Plaintiff's work, labor, and services rendered without any payment of any consideration since Jan. 18, 1971." Second Am. Compl. ¶ 163. It is not clear why Plaintiff chose this date, nor is it clear upon what basis the Estate claims the Katrina Defendants owed it royalties.

As it may do when ruling on a motion to dismiss, the Court takes judicial notice of the 1968 settlement agreement between Katrina Music Co. and Frederick Music Co., which had an exclusive license to use the musical compositions in the Lawn catalogue. *See Langone v. Miller*, 631 F.Supp.2d 1067, 1070 (N.D. Ill. 2009). That agreement provided that Cobbs was the sole author of the song, but that Katrina and Frederick were co-owners and that each could license the song. Plaintiff argues in its response that the settlement was invalid because it excluded the copyright holder, Joe Brown. However, the Publishing Agreement between Lawn and Frederick Music, as noted above, gave Frederick all rights under

- 21 -

Brown's copyrights. As such, the Court agrees with the Katrina Defendants that to the extent the Estate claims that it was owed royalties, this obligation would have stemmed from the Publishing Agreement between Lawn and Frederick Music. The Katrina Defendants were not parties to that agreement, and regardless, this claim also is time-barred. *See* 735 Ill. Comp. St. 5/13-205.

### 3. *Accounting (Count IX)*

For the reasons discussed above in relation to Defendant Music Sales, and because the Estate has failed to allege a valid basis upon which the Katrina Defendants owe it royalties, this count is dismissed as to the Katrina Defendants.

### 4. *Constructive Trust (Count X)*

Again, as discussed in relation to Music Sales, the Estate's claim for a constructive trust fails where it has adequately pleaded neither fraud nor the existence of a fiduciary relationship. *Schultz*, 696 N.E.2d at 1173.

### 5. *Civil Conspiracy (Count XI)*

Plaintiff has failed to allege the elements of civil conspiracy under Illinois law, or its underlying tort claims, so this count is dismissed as to the Katrina Defendants.

### 6. *Leave to Amend*

Given that the Plaintiff has failed to proffer an amended complaint that would cure the deficiencies in its claims against

the Katrina Defendants and the Court cannot see how it could do so, these claims are dismissed with prejudice.

### D.  ARC Defendants' Motion to Dismiss

The Estate seeks to recover from the Arc Defendants for Copyright Infringement (Count I), Fraud (Count II), Unjust Enrichment (Count VIII), an Accounting (Count IX), a Constructive Trust (Count X), and Civil Conspiracy (Count XI).

These claims are based in part on its allegation that the Arc Defendants filed copyright registrations for works owned by Lawn, Job, or Ruler without authorization in an effort to claim the right to these compositions.  As with its other claims, the Estate's theory of the case is not entirely clear, and the contentions in its response memorandum do little to clarify matters.

Regardless, as best the Court can discern, Plaintiff's allegations as to the composition "This New Generation" are as follows.  Joe Brown registered the copyright for this song on August 9, 1968, and James Oden ("Oden"), a co-author of the song, registered a copyright on April 11, 1970.  On January 6, 1998, Arc Music filed a renewal registration on behalf of Doris Burton, Oden's next of kin.  The registration listed two claimants: Burton as next-of-kin for Oden, "c/o ARC Music, 254 W. 54th St., 13th Floor, New York, NY 10019," and Brown, also "c/o Arc Music." The Estate alleges that Arc Music was never authorized to collect funds for Joe Brown.  On the same day, Arc filed an additional

renewal of Oden's registration, which listed only Oden as the author of the work.

As to the composition "Dark Road Blues," the Estate alleges that it was created by Brown and another songwriter, Floyd Jones, in 1951. In 1952, Brown and Jones co-wrote "On the Road Again," which the Second Amended Complaint confusingly describes both as "part two" to "Dark Road Blues," and substantially the same as "Dark Road Blues." Second Amended Compl., ¶¶ 38, 39. In 1953, according to the Complaint, Jones assigned his rights in "On the Road Again" to Brown.

Then, on June 28, 1961, Brown filed an application for registration of copyright for "Dark Road Blues." Jones and Brown were listed as co-authors. On August 18, 1964, the Arc Defendants filed an application for registration of copyright listing Jones as the sole author of "Dark Road," a composition that Plaintiff claims is identical to "Dark Road Blues." (For the purposes of this motion, the Court will accept that they were the same song.)

Additionally, the Estate alleges that at various points, Joe Brown and/or his companies owned certain works he lists in Ex. 2A to the Second Amended Complaint. (The Court notes that this list is incomplete, although a complete version was supplied to the Arc Defendants and submitted to the court by them.) Regardless, the Estate alleges that the Arc Defendants or their affiliates have

collected royalties for some of these songs that were rightfully due the Estate.

## 1. Copyright Infringement (Count I)

### a. "This New Generation"

As to its claim regarding "This New Generation," the Arc Defendants contend that the Estate has essentially pleaded itself out of court because it acknowledges that Oden was a co-author of the song. This makes Oden and Brown joint authors, and joint authors (and their successors, like the Arc Defendants) cannot be liable to one another for copyright infringement. *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 47 (1st Cir. 2008); *Dead Kennedys v. Biafra*, 37 F.Supp.2d 1151, 1153 (N.D. Cal. 1999). Thus, the Arc Defendants argue, any exploitation of the song on behalf of his next-of-kin, Burton, cannot give rise to an infringement claim.

While the Estate alleges that Oden "was a work for hire under Lawn," Second Am. Compl. ¶ 25, it includes no facts supporting this assertion. This is important because, as noted above, if "This New Generation" was a work-for-hire, then Lawn would have been the sole owner of the composition. *Martha Graham Sch. and Dance Found.*, 380 F.3d at 634. However, Brown's own copyright registration, in which he listed Oden as a co-author of "This New Generation," belies any assertion that this was a work-for-hire. As such, it is clear to the Court that Oden and Brown were joint authors, and the Estate

cannot recover for copyright infringement based on a co-author's exploitation of the copyright.

Again, the Estate's pleadings as to the alleged wrongdoing by the Arc Defendants are difficult to follow and display a poor grasp of the underlying principles of copyright law. For example, in an apparent effort to show that the Arc Defendants' renewal registration on behalf of Oden's next-of-kin was invalid, the Estate argues that Oden's original registration of the work was invalid because Brown already had registered the work. This is incorrect because federal regulations provide that when someone other than an author is identified as a claimant in registration, another registration may be made by the author in his own name. 37 C.F.R. § 202.3(b)(11)(ii).

However, courts have held that although a joint owner may not be liable for copyright infringement, the joint owner must account to other joint owners for a share of the profits realized from his or her sole use of the jointly owned work. *DeBitetto v. Alpha Books*, 7 F.Supp.2d 330, 335 n.6 (S.D.N.Y. 1998) (citing Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 6.12[A](1997)). It is possible, as the Court will discuss subsequently, that the Estate may have a claim for accounting against the Arc Defendants. But it has clearly failed to plead a claim for copyright infringement in regard to this work.

- 26 -

   *b.  Copyright Infringement as to "Dark Road Blues"*

The Estate fares no better in relation to its copyright infringement claim as to "Dark Road Blues." Plaintiff argues that, even though the composition was jointly created by Brown and Jones, Brown became the sole owner when a company called Metric Music Co. assigned one-half of its interest in "On the Road Again" to Lawn.

The Estate's arguments on this point are unclear. Plaintiff simultaneously pleads that "On the Road Again" is both part two to "Dark Road Blues," and "substantially the same." Pl.'s Second Am. Compl. ¶¶ 38, 39. Plaintiff also pleads that Jones, in 1953, assigned his interest in "On the Road Again," to Brown. The Court notes that the assignment from Metric Music Co. is dated August 7, 1970, and it is unclear it is to this assignment that the Estate refers when it claims that Jones assigned his rights in "On the Road Again" to Brown.

Regardless, the Court cannot figure out how the assignment of "On the Road Again," a subsequent work to "Dark Road Blues," would have given Brown sole rights to "Dark Road Blues." Plaintiff makes no attempt to explain this. Further, the fact that Brown, in 1961, filed a copyright registration listing Jones as a claimant belies the Estate's contentions that Brown became the sole owner of the rights to "Dark Road Blues" in 1953.

As with "This New Generation," Plaintiff's pleadings and exhibits show that Brown and Jones were joint owners of "Dark Road

Blues," and thus a copyright infringement claim does not lie against the Arc Defendants, Jones' successors-in-interest. (Whether a claim for accounting may lie will be discussed below.)

### c. Copyright Infringement as to the listed works

Plaintiff has additional problems with establishing a copyright violation in regard to the list of 80 songs that it attempted to attach to its complaint. Plaintiff has annexed copyright registration certificates for only three of those songs — "Dark Road Blues," "On the Road Again," and "This New Generation." Plaintiff fails to allege that the other compositions have been registered and does not even allege that it currently owns the copyrights to these works. This is insufficient to state a claim. *See Reid v. ASCAP*, No 92 Civ. 270, 1994 U.S. Dist. LEXIS 2151, at *6 (S.D.N.Y. Jan. 5, 1994).

The prerequisite of registration prior to filing a suit predates the 1976 version of the Copyright Act and also was a requirement under the 1909 version of the Act, which would cover the works at issue here. *See G.R.I. Corp. v. Golden Fifty Pharm. Co.*, No. 74 C 2830, 1975 U.S. Dist. LEXIS 12785, at *4 (N.D. Ill. Apr. 18, 1975); *see also Burns v. Rockwood Distrib. Co.*, 481 F.Supp.841, 845-46 (D.C. Ill. 1979) (describing it as "well-settled that registration is a precondition to filing suit."). Plaintiff fails to address meaningfully why this requirement was not met here or whether it can be met at all in regard to the 77 listed works.

As such, Plaintiff's infringement claims in regard to these works must be dismissed.

Finally, because the Estate has failed to offer any explanation as to how its copyright claims might be cured through an amended complaint, the Court dismisses Count I with prejudice.

### 2.  *State Law Claims*

Plaintiff's state law claims against the Arc Defendants present many of the same problems discussed above in relation to the other defendants in that they are confusingly and inadequately plead in many instances.  The claims of fraud and civil conspiracy, in particular, are conclusory and wholly inadequate.  Because the Court cannot see how an amended complaint might solve these problems, and the Estate has not proffered any explanation as to how it might do so, the Court dismisses these claims, as well as Plaintiff's claim for a constructive trust, with prejudice.

The Estate's unjust enrichment and accounting claims, however, are more problematic.  The attachments to the Second Amended Complaint clearly show a joint ownership relationship between Brown and the Arc Defendants' predecessors-in-interest as to "Dark Road Blues" and "This New Generation," and the Arc Defendants admit that there is a co-ownership relationship.

As noted above, co-owners must account to one another for the profits generated by copyrighted works.  In *Gaiman v. McFarlane*, 360 F.3d 644, 652–53 (7th Cir. 2004), the Seventh Circuit held that

when co-ownership is contested, the alleged co-owner must seek a declaration of ownership and an accounting under the federal Copyright Act. *Id.* at 652–53. However, where co-ownership is conceded and the only issue is the equitable division of profits, the appropriate remedy is a state law suit for accounting of profits. *Id.* at 652. Similarly, although state law unjust enrichment claims are typically preempted by the Copyright Act, a state law unjust enrichment claim between acknowledged co-owners might not implicate the Copyright Act. *Cf. Heriot v. Byrne*, No. 08 C 2222, 2008 WL 5397496, at * 4 (N.D. Ill. Dec. 23, 2008).

This case presents an odd wrinkle because the Plaintiff pleads that Brown was the sole owner of the "This New Generation" and "Dark Road Blues," even though the attachments to his Complaint prove otherwise. Plaintiff's pleading of its accounting and unjust enrichment claims do not rest on a co-ownership theory, but rather on fraud. In fact, the Estate devotes just one line to a potential co-ownership theory in its response brief, and even then, it attempts to premise a right of recovery on fraud. Specifically, the Estate contends that even if its copyright infringement claims fail because Oden and Jones assigned their copyrights to Arc, "Plaintiff still has a claim for unjust enrichment and fraud since Defendants fail to pay the Plaintiff their *[sic]* right share in the works."

The Estate's Second Amended Complaint is so convoluted and confusing that it cannot be fairly said to provide the Arc Defendants with notice of state-law accounting claim based on co-ownership. Nor is the Court certain that such claims would be timely. However, the Court notes that this is the first Motion to Dismiss by the Arc Defendants. Where the facts indicate that the Estate may have a valid claim for an accounting and unjust enrichment as to two of the compositions, the Court will allow the Estate to replead those claims within thirty (30) days of the date of this Order, provided that there is a jurisdictional basis for this Court to preside over these claims. (The Estate has alleged in its Complaint that the parties are diverse.)

However, Plaintiff's counsel is warned that a greater degree of clarity and familiarity with the underlying principles of law will be expected in all future pleadings.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1. Defendant Music Sales Motion to Dismiss [52] is granted, and all claims against it are dismissed with prejudice.

2. Defendants Frederick Music Co. and Victor Brandom's Motion to Dismiss [58] is granted, and all claims against them are dismissed with prejudice.

3.    Defendants Katrina Music Co. and Willie Cobbs' Motion to Dismiss [64] is granted, and all claims against them are dismissed with prejudice.

4.    Defendants Arc Music Group and Opus 19 Music, LLC's Motion to Dismiss [80] is granted and all claims against it are dismissed with prejudice, except that the Estate may replead its claims for an accounting and unjust enrichment as to "This New Generation" and "Dark Road Blues" within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

_____
      Harry D. Leinenweber, Judge
      United States District Court

**DATE:** 11/22/2011